USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

Orlando O.,

Plaintiff,

-against-

Commissioner of Social Security,

Defendant,

Social Security Administration,

Interested Party.

---------------------------------------------------------------X

25-cv-04159-VR

**OPINION & ORDER**

**VICTORIA REZNIK**, United States Magistrate Judge:

Plaintiff Orlando O. brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final determination of the Commissioner of Social Security (the Commissioner), which denied his application for disability benefits under the Social Security Act and Supplemental Security Income, and found that he was not disabled. This action is before the undersigned because the parties consented to the jurisdiction of a Magistrate Judge for all proceedings on May 29, 2025. (ECF No. 8). Plaintiff now moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 17), which the Commissioner opposes by cross-motion, also under Rule 12(c). (ECF No. 20). For the reasons below, Plaintiff's motion is **DENIED** and the Commissioner's motion is **GRANTED.**

## I. BACKGROUND[1]

### A. Application History

On July 1, 2022, Plaintiff applied for supplemental social security income and disability benefits under the Social Security Act. (ECF No. 9 at 221–22).[2] In both applications, he alleged that he had been disabled since June 21, 2019. (*Id.* at 221). Both of Plaintiff's claims were administratively denied in October 2022 (*id.* at 83–84), and again after reconsideration in June 2023 (*id.* at 94–95).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (*id.* at 109), and a hearing was scheduled for March 22, 2024 (*id.* at 184–88). Plaintiff appeared at the hearing with his attorney and testified about his prior work experience, purported impairments, and general medical history. (*Id.* at 36–55). A vocational expert also testified. (*Id.* at 51–55).

In May 2024, the ALJ issued a written decision, in which she concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 19–31). Plaintiff sought review by the Appeals Council, but his request was denied. (*Id.* at 5–9). He then commenced this action in May 2025. (ECF No. 1). Plaintiff now moves for judgment on the pleadings. (ECF No. 17). The Commissioner opposed the motion by

---

[1] The information in this section is taken from the administrative record of the Social Security Administration, filed by the Commissioner on July 21, 2025 (ECF Nos. 9, 9-1 to 9-11) (SSA Record). The undersigned conducted a plenary review of the entire administrative record, familiarity with which is presumed. The undersigned assumes knowledge of the facts surrounding Plaintiff's medical history and does not recite them in detail, except as relevant to the analysis set forth in this Opinion and Order.

[2] All page numbers to documents filed on ECF refer to the blue pagination generated by ECF in the top right corner of a given page, not the sequential numbering of the SSA Record in the bottom right corner of the page, unless otherwise stated.

cross-moving for judgment on the pleadings (ECF No. 20), and Plaintiff replied (ECF No. 21).

**B. Record Before the ALJ**

In his motion papers, Plaintiff provided a summary of the testimonial, medical, and vocational evidence in the administrative record (ECF No. 18 at 5–11), and the Commissioner did the same in his motion papers (ECF No. 20 at 6–9). Based on an independent and thorough examination of the administrative record, the undersigned finds that the summary of the evidence is largely comprehensive and accurate. Thus, the undersigned adopts the summary and details the SSA Record below only as needed to determine the issues the parties raise. *See Roane v. O'Malley*, 22 Civ. 10704 (AEK), 2024 WL 1357845, at *2 (S.D.N.Y. Mar. 29, 2024).

## II. LEGAL STANDARDS

**A. Standard of Review**

This Court "engage[s] in limited review" of the Commissioner's decision. *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). It "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"The substantial evidence standard is a very deferential standard of review. " *Schillo*, 31 F.4th at 74 (internal quotation marks and citation omitted). It is not the function of the Court "to determine *de novo* whether a plaintiff is disabled." *Id.* (internal quotation marks and citations omitted). Instead, the Court asks whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). In doing so, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citations omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* (internal quotation marks and citation omitted). Put differently, "once an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (internal quotation marks and citations omitted).

Deference, however, does not extend to legal error. "[W]here an error of law has been made that might have affected the disposition of the case, this [C]ourt cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (citation modified). Thus, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.* (internal quotation marks and citations omitted). Remand may also be appropriate when "there are gaps in the administrative record" or when the ALJ's rationale is unclear

in relation to the evidence in the record. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks and citations omitted); *accord Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005). In such cases, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning may be warranted. *Pratts*, 94 F.3d at 39 (internal quotation marks and citations omitted).

**B. Statutory Disability**

Under the Social Security Act, a claimant is disabled when the claimant lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Schillo*, 31 F.4th at 69–70. The claimant qualifies for disability benefits

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Regulations, 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), set forth a five-step sequential analysis for evaluating whether a person is disabled under the Social Security Act. *See Schillo*, 31 F.4th at 70. "If at any step a finding of disability or nondisability can be made, the Commissioner will not review the claim further."

*Id.* (citation modified). Under the five-step process, the Commissioner determines the following:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments;[3]
> (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments");[4]
> (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work;[5] and
> (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.[6]

*Schillo*, 31 F.4th at 70 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v)).

"At step three, the [Commissioner] determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies." *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). But "[i]f the claimant's impairment is not on the list, the inquiry proceeds to step four." *Id.* "The claimant bears the burden of proof in the first four steps of the sequential inquiry." *Schillo*, 31 F.4th at

[3] A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

[4] Listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations. 20 C.F.R §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner moves on to step four and must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

[5] A claimant's RFC represents "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[6] To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, considering his or her RFC and vocational factors, can perform. 20 C.F.R. § 404.1560(c).

70 (internal quotation marks and citation omitted). "In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Id.* "Because the shift in step five is limited, the Commissioner need not provide additional evidence of the claimant's residual functional capacity." *Id.* (internal quotation marks and citations omitted).

## III. THE ALJ'S DECISION

In her decision, the ALJ applied the requisite five-step analysis to assess Plaintiff's disability claim. (ECF No. 9 at 19–31). At step one, she determined that there was "a continuous 12-month period[] during which [Plaintiff] did not engage in substantial gainful activity," despite Plaintiff engaging in substantial gainful activity from January 1, 2019 to December 31, 2019—which included the alleged onset date of his disability. (*Id.* at 21–22). At steps two and three, she determined that Plaintiff's physical and mental impairments of diabetes mellitus, obesity, benign prostate hyperplasia, generalized anxiety disorder, major depressive disorder, persistent depressive disorder with anxious distress, and adjustment disorder with mixed anxiety and depressed mood" were severe. (*Id.* at 22). The ALJ further found that Plaintiff's impairments, either singly or combined, did not equal the necessary severity. (*Id.*).

In reaching that conclusion, the ALJ proceeded through each of the four broad functional areas that must be reviewed: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or

maintaining pace; and (4) adapting or managing oneself. (*Id.* at 22–24).[7] Relying on Plaintiff's longitudinal medical records, his testimony at the March 2024 hearing, and the medical opinions from two agency reviewers and a consultative examiner, the ALJ found that Plaintiff had a moderate limitation in each of the four functional areas. (*Id.*). Based on the combination of these moderate limitations in the four functional areas and the other evidence in the SSA Record, the ALJ found that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation. (*Id.*).

At step four, the ALJ determined that Plaintiff had an RFC "to perform medium work" with four nonexertional limitations: (1) he could "climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds;" (2) he could "never work at unprotected heights, never [work] with moving mechanical parts, and never operate a motor vehicle;" (3) he could "perform simple, routine tasks, simple work-related decisions, and have occasional contact with supervisors, coworkers, and the public;" and (4) he could "only have occasional changes in a routine work setting." (*Id.* at 24). The ALJ explained that she arrived at these nonexertional limitations after considering Plaintiff's testimony, all relevant medical opinions, prior administrative medical findings, and any other relevant evidence in the SSA Record. (*Id.* at 24–29).

[7] If a claimant is found to have a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from the impairment across the four broad functional areas described above. 20 C.F.R. §§ 404.1520a(a), (c)(2)–(3), 416.920a(a), (c)(2)–(3). If a claimant has no more than mild limitations in the four broad functional areas, then the ALJ will generally conclude that the mental impairment, or combination of impairments, is non-severe. *Id.* at §§ 404.1520a(d)(1), 416.920(a)(d)(1).

The ALJ concluded that the medical evidence in the SSA Record confirmed that Plaintiff's severe impairments "could reasonably be expected to cause the alleged symptoms," but did not corroborate "the intensity, persistence[,] and limiting effects of these symptoms." (*Id.* at 25). She noted that Plaintiff "can perform[] a wide range of medium work with some postural, environmental, and non-exertional limitations" and was capable of performing "a wide variety of [activities of daily living]." (*Id.*).

The ALJ chronicled Plaintiff's longitudinal medical history by summarizing treatment notes from November 2019 to December 2023. (*Id.* at 25–27). She noted that on multiple occasions he had low scores on the PHQ-9 and GAD-7 exams and also stated that he "felt fine" mentally. (*Id.* at 25–26). And the medication Plaintiff was prescribed for his diabetes was reportedly working well. (*Id.* at 25).

The ALJ finished by pointing to the medical opinion evidence from the agency reviewers and the consultative examiner. She first addressed the opinions from agency reviewers Dr. Chen and Dr. Putcha, who both opined that Plaintiff did not have a severe physical impairment. (*Id.* at 27). She found their opinions unpersuasive because of Plaintiff's treatment for diabetes mellitus, obesity, and benign prostate hyperplasia, beginning in about June 2019. (*Id.*). The ALJ also gave "no persuasiveness" to the opinions of agency reviewers Dr. Juriga and Dr. Kamin, who opined that Plaintiff had no more than a mild limitation in each functional area. (*Id.*). She found these opinions "not consistent with or supported by the longitudinal medical evidence of record," which supported moderate limitations in

each B criteria domain due to Plaintiff's symptoms of "occasional fear of going outside of his home, some auditory hallucinations, . . . occasional paranoia, and delusions." (*Id.* at 27–28). Lastly, she emphasized the consultative psychiatric examination and report done by Dr. Porcelli, who found moderate limitations in all four of the functional areas but stated that Plaintiff had "[n]o limitations with regard to sustaining an ordinary routine and regular attendance at work" and that his mental impairments were not "significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.* at 28–29; ECF No. 9-4 at 113–14). The ALJ found Porcelli's medical opinion "generally persuasive even though it was based on an examination," but "less persuasive" regarding her opinion that Plaintiff had a moderate limitation in his ability to regulate emotions, as he had only mild limitations in his mental status examination. (ECF No. 9 at 28).

Finally, at step five, the ALJ determined that Plaintiff was not disabled because there were jobs he could perform when accounting for his RFC, age, education, and work experience. (*Id.* at 30–31). The ALJ highlighted the vocational expert's testimony at the March 2024 hearing that Plaintiff could perform roles such as Packer, Dishwasher, and Cleaner. (*Id.*). Because Plaintiff could adjust to working in those roles, he was not disabled. (*Id.*).

## IV. DISCUSSION

Plaintiff makes two arguments that challenge the ALJ's RFC determination at step four. (ECF Nos. 18 at 13–16; 21 at 1–2). The Court addresses each in turn.

### A. The ALJ's RFC determination did not explicitly incorporate limitations relating to Plaintiff's ability to stay on task or attend work regularly, but her rationale for doing so is readily apparent and supported by substantial evidence.

Plaintiff first argues that the ALJ's RFC determination failed to include limitations "addressing [his] ability to remain on task, sustain concentration, or maintain regular attendance," or explain why no such limitations were included. (ECF No. 18 at 13–15).[8] According to Plaintiff, because the ALJ found a moderate limitation in "concentrating, persisting, and maintaining pace," the record findings "directly implicate [his] ability to stay on task, maintain attendance, and sustain work over the course of a full workday and workweek." (*Id.* at 14). Plaintiff argues that the omission of corresponding RFC limitations requires remand because the resulting RFC cannot be supported by substantial evidence. (*Id.* at 14–15).

Plaintiff is only partially right. Although the RFC did not explicitly include separate limitations on staying on task or maintaining attendance, the ALJ's reasons for omitting them are apparent from the decision as a whole. And those reasons are supported by substantial evidence, including Plaintiff's longitudinal treatment history, his acknowledged ability to engage in various activities of daily living, and Dr. Porcelli's consultative examination. (ECF No. 9 at 24–29). Under the deferential standard of review, the ALJ's RFC determination must be upheld if it is rational and supported by the record, "even if the evidence is susceptible to more than one rational interpretation." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (citation modified).

---

[8] Plaintiff reiterated both of these arguments in his reply papers. (ECF No. 21 at 1–2).

The ALJ first relied on Plaintiff's longitudinal physical and mental health treatment history, which showed his relatively stable condition over time. She noted that Plaintiff's diabetes was reportedly uncontrolled beginning in February 2020, but had improved by December 2020, when it was "well managed with medication." (*Id.* at 25 (citing Ex. 1F at 108)).[9] That well-managed status continued into 2023, along with consistently normal blood pressure readings and physical examinations. (*Id.* at 26 (citing Ex. 1F at 10, 18, 36, 97, 112)).

Plaintiff's mental health records followed a similar path. During visits in November and December 2019, he reported doing well with no distress. (*Id.* at 25 (citing Ex. 1F at 186, 189)). His PHQ-9 and GAD-7 scores in November 2020 and January 2021 showed only mild depression and some anxiety, and by August 2021 he reported that "his mind was clearer" and he was less afraid to go outside. (*Id.* at 25–26 (citing Ex. 1F at 63)). Although he had been diagnosed with several mental disorders, on February 18, 2022, he reported that he "felt fine most of the time, but after having a few good days, he will start to feel anxious, which is related to his unemployment." (*Id.* at 26 (citing Ex. 1F at 34)). His PHQ-9 and GAD-7 scores then fell to zero or near zero, indicating no depressive symptoms (*id.* at 26 (citing Ex. 1F at 42, 51)), before increasing on April 27, 2022, to levels indicating moderately severe depression. (*Id.* at 27 (citing Ex. 2F at 25)). By September 2023, Plaintiff

[9] In instances where there is a need to cite a specific exhibit referred to by the ALJ, the corresponding page number cited is the internal page number of the exhibit, not the sequentially numbered page number in the bottom right-hand corner of the SSA Record.

continued to report negative thoughts and fears but stated that psychotherapy had helped reduce the frequency of his depression. (*Id.* at 27 (citing Ex. 8F at 95)).

Plaintiff's adult function report also included statements about his ability to engage in certain activities of daily living. He reported having "no problem" getting dressed, eating, or using the bathroom, even though he had to be reminded about showering and shaving. (ECF Nos. 9 at 24; 9-1 at 15). Similar information was reported in Dr. Porcelli's consultative examination. She stated that Plaintiff reported that he could "prepare simple meals and do light general cleaning," "do some laundry," shop for "simple purchases," manage small sums of money, and take public transit. (ECF No. 9-4 at 113–14). And she found that Plaintiff had no limitation in his ability to maintain his personal hygiene, wear appropriate attire, or address hazards he experienced. (*Id.* at 114). Dr. Xie's internal medicine examination also reported that Plaintiff was able to "shower and dress himself daily." (*Id.* at 106–07). And at the March 2024 hearing, Plaintiff testified that he was able to cook food if his wife was unable to make something and that he used public transit to attend appointments with no issues. (ECF No. 9 at 24–25, 47–48).

The ALJ also relied more generally on Dr. Porcelli's consultative examination. Dr. Porcelli expressly found no limitation in Plaintiff's ability to sustain an ordinary routine and regular attendance at work, notwithstanding other moderate mental limitations. (ECF No. 9-4 at 113–14). Specifically, Dr. Porcelli opined that his attention, concentration, and memory were each "[m]ildly impaired," which were "most likely due to [his] mental health issues." (*Id.* at 113). Regarding

his attention and concentration, she explained that he could do "simple calculations," but made errors while doing more complex ones. (*Id.*). And with respect to his memory, she explained that he successfully remembered things immediately but could not later recall them after a few minutes elapsed. (*Id.*). She opined further that he had various moderate limitations in certain areas (*id.* at 113–114), but he had "[n]o limitation with regard to sustaining an ordinary routine and regular attendance at work." (*Id.* at 114). And although Dr. Porcelli identified moderate limitations, "difficulties" caused by his depression and anxiety, and "psychiatric problems," Porcelli concluded that those problems "d[id] not appear to be significant enough to interfere with [his] ability to function on a daily basis." (*Id.* at 113–14). The ALJ found Porcelli's opinion "generally persuasive even though it was based on an examination." (ECF No. 9 at 28).

After reviewing the record as a whole, the ALJ acknowledged that Plaintiff had "some irritability and difficulty managing stressors as well as negative thoughts and worry about finances," but noted that his mental status examinations had been normal overall. (*Id.* at 29). She concluded that the RFC was supported by "the longitudinal medical evidence of the record, [Plaintiff's] acknowledged ability to engage in a variety of activities of daily living, [his] statements about his symptoms and functioning at the hearing and throughout the record, including the side effects from medication, his response to treatment, the level of care he has sought and received, objective imaging and examination results, and consistent/supportable aspects of the medical opinions." (*Id.*). That explanation permits the Court to trace

the ALJ's reasoning about why she did not include separate limitations for time off-task or attendance, and is supported by substantial evidence. *See Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (explaining that ALJ must "set forth the crucial factors underlying their factual findings and determinations with *sufficient specificity* so that the reviewing court can decide whether the determination is supported by substantial evidence" (internal quotation marks and citations omitted)).

Plaintiff relies heavily on *Nunez v. Commissioner of Social Security*, 164 F.4th 60 (2d Cir. 2025), but reads it too broadly. Plaintiff argues that, under *Nunez*, a moderate limitation in concentration, persistence, and maintaining pace requires an express RFC limitation addressing the claimant's "ability to remain on task, sustain concentration, or maintain regular attendance." (ECF No. 18 at 14–15). He further argues that omitting such a limitation necessarily requires remand because the resulting RFC cannot be supported by substantial evidence. (*Id.*).

*Nunez* does not impose such a categorical requirement. There, the medical opinions, including the evidence the ALJ found persuasive, were largely unanimous that the claimant "had at least moderate limitations in his ability to maintain a regular work routine and, to the extent that they opined on the issue, also concluded that he would miss at least two days of work per month." *Nunez*, 164 F.4th at 72–73. Yet, the RFC contained no corresponding limitation, and the ALJ did not explain why those identified limitations had been omitted. *Id.* at 71. After reviewing "the entirety of the ALJ's decision and the administrative record," the

Second Circuit found that it "cannot find *any* justification for the ALJ's RFC determination." *Id.* (emphasis in original).

This case is readily distinguishable. Unlike in *Nunez*, the medical opinion the ALJ found generally persuasive affirmatively assessed "no limitations with regard to sustaining an ordinary routine and regular attendance at work" and no interference with Plaintiff's "ability to function on a daily basis," notwithstanding his "psychiatric problems." (ECF No. 9-4 at 114). The ALJ found that opinion "generally persuasive." (ECF No. 9 at 28). She also explained that the RFC incorporated restrictions designed to account for Plaintiff's "severe mental health impairments" by limiting him "to work involving only simple, routine tasks, occasional interaction with the public, co-workers, and supervisors, and occasional changes in the routine work setting." (*Id.* at 29). "The Second Circuit has found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work." *Aponte v. Kijakazi*, 692 F. Supp. 3d 257, 268 (S.D.N.Y. 2023) (citation modified) (affirming ALJ's RFC determination after finding it properly accounted for mental health impairments because it limited plaintiff to unskilled work); *see Morales v. Berryhill*, 484 F. Supp. 3d 130, 150 (S.D.N.Y. 2020) ("The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work." (citation modified)).

The ALJ thus did not silently omit a work-related limitation identified by the evidence she credited. Rather, the RFC was consistent with the functional

assessment she accepted and the longitudinal evidence she discussed. Unlike in *Nunez*, then, the Court need not speculate about why the ALJ omitted a separate limitation for time off-task or attendance.

The post-*Nunez* cases cited by the parties reflect this same distinction: an RFC may be sustained where the ALJ's reasons for including or omitting particular mental limitations can be discerned from the decision and are supported by the record. *See Marie F. G. v. Comm'r of Soc. Sec.*, 25 Civ. 416 (NSR)(JCM), 2026 WL 540604, at *14–17 (S.D.N.Y. Feb. 12, 2026) (finding RFC supported by substantial evidence because ALJ's rationale for including or excluding specific limitations could be gleaned from entire decision), *report & recommendation adopted sub nom. by Galarza v. Comm'r of Soc. Sec.*, 2026 WL 1078558 (S.D.N.Y. Apr. 21, 2026); *Leyla S-H*, 1:25-CV-03735-GRJ, 2026 WL 1493379, at *7–8 (S.D.N.Y. May 28, 2026) (finding RFC supported by substantial evidence because ALJ provided "detailed explanation" for why certain mental functioning restrictions included in RFC determination). And, as here, the Second Circuit has affirmed an RFC where the credited medical evidence expressly concluded that the claimant could "sustain a normal workday and work week." *Benjamin v. Comm'r of Soc. Sec.*, No. 25-2343, 2026 WL 697004, at *2 & n.2 (2d Cir. Mar. 12, 2026) (summary order) (internal quotation marks and citation omitted).

The ALJ's RFC determination was therefore supported by substantial evidence. *See id.* at *4; *Marie F. G.*, 2026 WL540604, at *16–17 (concluding ALJ's RFC without specific on-task limitation supported by substantial evidence).

**B. The ALJ's RFC determination did not err in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms.**

Plaintiff next argues that the ALJ improperly rejected his March 2024 hearing testimony about the "intensity, persistence, and limiting effects of his symptoms" based solely on Plaintiff's statements being inconsistent with "objective medical evidence." (ECF No. 18 at 16).[10] Plaintiff argues that the ALJ instead was required to consider the entire SSA Record and give specific reasons for rejecting his testimony. (*Id.*). The Commissioner responds that the ALJ did just that, relying on the record as a whole, including medical opinion evidence and Plaintiff's longitudinal treatment history. (ECF No. 20 at 15–17).

Plaintiff mischaracterizes the ALJ's analysis. The ALJ found that his impairments could reasonably be expected to cause his alleged symptoms, but that his statements "concerning the intensity, persistence[,] and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 9 at 25). That is not the same as rejecting his testimony; that is "precisely what the relevant regulations required of her." *Earl G. W. v. Comm'r of the Soc. Sec. Admin.*, 25 Civ. 7314 (GWG), 2026 WL 1699282, at *7 (S.D.N.Y. June 12, 2026) (rejecting argument that ALJ "impermissibly rejected [plaintiff's] testimony solely because the available objective medical evidence did not substantiate it" and finding ALJ did not err when she found testimony inconsistent with record evidence (citation modified)).

[10] Plaintiff did not reiterate this argument in his reply papers, despite reasserting his other argument about the RFC determination. (ECF No. 18 at 16).

Even accepting Plaintiff's characterization, however, the ALJ did not err. When an ALJ determines that a plaintiff's statements about their symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and determine the extent to which plaintiff's alleged limitations and restrictions due to symptoms "can reasonably be accepted as consistent" with it. 20 C.F.R. § 404.1529(c)(4). In doing so, the ALJ must consider several factors such as the plaintiff's daily activities and any treatments they received, among other things.[11] *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order); *Kerissa Monique J. v. Comm'r of Soc. Sec.*, 7:24-CV-08645-GRJ, 2025 WL 2607517, at *7 (S.D.N.Y. Sept. 8, 2025). But the ALJ need not discuss each factor separately. They need only provide "specific reasons" for their determination so that a reviewing court can determine whether the ALJ's rationale was supported by substantial evidence. *Cichocki*, 534 F. App'x at 76 (affirming ALJ decision, despite noting ALJ "did not discuss all seven factors," because ALJ thoroughly explained the evaluation of plaintiff's symptoms); *see Kerissa Monique J.*, 2025 WL 2607517, at *7 ("[T]he ALJ must explain the decision to reject a claimant's testimony with sufficient specificity to enable the reviewing Court to decide whether there are

---

[11] More specifically, the ALJ must consider seven factors: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." *Kerissa Monique J v. Comm'r of Soc. Sec.*, 7:24-CV-08645-GRJ, 2025 WL 2607517, at *7 (S.D.N.Y. Sept. 8, 2025) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii)).

legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence." (citation modified)).

The ALJ did so here. At the March 2024 hearing, Plaintiff testified about both his physical and mental symptoms. He testified that his diabetes sometimes caused his feet to swell and go numb, which made it difficult to walk and often caused him to lose his balance. (ECF No. 9 at 45). He also reported difficulty standing, sitting, and lying down for extended periods, as well as pain when keeping his arms in one position. (*Id.* at 49–50). As to his mental symptoms, Plaintiff testified that he experienced anxiety attacks when he heard loud noises or when someone yelled at him. (*Id.* at 45–47). He further testified that these symptoms interfered with washing dishes, doing laundry, cooking meals, and carrying things, although he remained able to take public transportation. (*Id.* at 47–49).

Although the ALJ did not identify and separately analyze every relevant factor, she gave specific reasons for finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not fully consistent with the record. Nor did she rely on objective findings alone. She first pointed to Plaintiff's longitudinal treatment history. (*Id.* at 25–27). In discussing Plaintiff's physical condition, she noted numerous instances of him having no trouble managing his diabetes. Although it was reportedly deemed "uncontrolled" during a visit in February 2020, this was attributed to his failure to abide by his medication prescriptions. (*Id.* at 25). By December 2020, his diabetes was reported as "well

controlled" and "well managed with medication." (*Id.*). The ALJ also pointed to no less than 10 visits where his blood pressure test results were within the normal range. (*Id.* at 25–26) (highlighting visits in August 2020, October 2020, December 2020, April 2021, July 2021, February 2022, April 2022, May 2022, January 2023, and May 2023). During one visit in February 2022, Plaintiff even explained that he had increased his level of physical activity and improved his diet by lowering the amount of carbohydrates and sugary drinks he consumed. (*Id.* at 26).

The ALJ also discussed the findings of the consultative internist, Dr. Laiping Xie, who examined Plaintiff on September 12, 2022. When discussing Plaintiff's activities of daily living, Dr. Xie noted that he "is able to shower and dress himself daily." (ECF No. 9-4 at 106-07). Dr. Xie also noted that Plaintiff appeared to be in no acute distress, his gait was normal, and he did not use an assistive device. (ECF No. 9 at 28). Plaintiff walked on his heels and toes without difficulty, had no sensory or motor deficits, and had 5/5 strength in all extremities. (*Id.*) Dr. Xie's report also noted that Plaintiff needed no help changing for the exam or getting on and off the exam table, and was able to rise from his chair without difficulty. (ECF No. 9-4 at 107). Although Dr. Xie did not give an opinion, the ALJ still found her examination "consistent with the findings within the objective medical evidence that shows no limitations for sitting, standing, walking, lifting, carrying, pulling or pushing" and factored those results into the RFC. (*Id.*)[12]

[12] Notably, Dr. Porcelli's consultative psychiatric examination, which the ALJ found persuasive, made similar comments about Plaintiff's daily activities. She noted that Plaintiff reported having difficulties with dressing, bathing, and grooming due to physical pain and discomfort, but he could

With respect to his mental health symptoms, the ALJ noted that Plaintiff self-reported in November and December 2019 that he was feeling well with no distress. (*Id.* at 25). His PHQ-9 and GAD-7 scores in November 2020 and January 2021 showed only mild depression and some anxiety, and by August 2021 he reported that "his mind was clearer" and he was less afraid to go outside. (*Id.* at 25–26). Although he had been diagnosed with several mental disorders, on February 18, 2022, he reported that he "felt fine most of the time." (*Id.* at 26 (citing Ex. 1F at 34)). His PHQ-9 and GAD-7 scores then fell to zero or near zero, indicating no depressive symptoms (*id.* at 26 (citing Ex. 1F at 42, 51)), before increasing on April 27, 2022, to levels indicating moderately severe depression. (*Id.* at 27 (citing Ex. 2F at 25)). By September 2023, Plaintiff continued to report negative thoughts and fears but stated that psychotherapy had helped reduce the frequency of his depression. (*Id.* at 27 (citing Ex. 8F at 95)). The ALJ also discussed Dr. Porcelli's report at length, which she found generally persuasive, and Plaintiff's mental status examinations, which were normal despite "some irritability and difficulty managing stressors." (*Id.* at 28–29 (citing Ex. 4F)).

Taken together, those findings regarding Plaintiff's physical and mental symptoms adequately explain why the ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the record. And the evidence the ALJ identified provides substantial evidence for that determination. Under the deferential standard of review here, the

---

prepare simple meals, do light general cleaning, do some laundry, shop for simple purchases, manage small sums of money, and take public transportation. (ECF No. 9-4 at 113).

Court therefore cannot conclude that the ALJ erred in evaluating Plaintiff's statements when making her RFC determination. *See Cichocki*, 534 F. App'x at 75–76 (affirming ALJ decision after concluding ALJ provided specific reasons for determination); *Kerissa Monique J.*, 2025 WL 2607517, at *7–8 (affirming ALJ decision, in part, after concluding that ALJ did not disregard Plaintiff's statements).

## CONCLUSION

For the reasons above, Plaintiff's motion for judgment on the pleadings is **DENIED** and the Commissioner's cross-motion for judgment on the pleadings is **GRANTED**.

**SO ORDERED.**

DATED: White Plains, New York
September 23, 2026

VICTORIA REZNIK
United States Magistrate Judge